UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| STEPHEN POLLILO | : | |
| Debtor | : | Bankruptcy No. 02-38061bf |

_____

| | | |
|---|---|---|
| STEPHEN POLLILO and WILLIAM C. MILLER, ESQ., Chapter 13 trustee, Interested party | : | |
| | : | |
| Plaintiff | : | |
| v. | : | |
| HARLEYSVILLE NATIONAL BANK | : | |
| Defendant | : | Adversary No. 09-0287 |

_____

.................................................

MEMORANDUM

.................................................

Before me is the defendant's motion to dismiss all counts of a complaint

filed by debtor Stephen Polilo,[1] which complaint alleges that Harleysville National Bank

_____

[1]Although Mr. Miller is listed by Mr. Pollilo as a plaintiff in the caption, he did not commence the litigation, did not participate in this adversary proceeding, would receive no relief were the litigation successful, and did not express any intention to join as a plaintiff in this proceeding.  See Fed. R. Civ. P. 19(a), incorporated by Fed. R. Bankr. P. 7019; see also Sheldon v. West Bend Equipment Corp., 718 F.2d 603, 606 (3d Cir. 1983) ("[P]rovision [regarding involuntary plaintiff] may only be invoked where (1) the party to be joined has an obligation to permit its name or title to be used to protect rights asserted in the action; (2) is beyond the jurisdiction of the court; and (3) has refused to voluntarily join in the action following

violated the discharge injunction, the confirmation order, Pennsylvania's unfair trade

practices act, and/or sections 542 and 362(a)(3) of the Bankruptcy Code, by failing to

mark its motor vehicle lien as satisfied upon the completion of the debtor's chapter 13

plan and entry of his bankruptcy discharge.  Harleysville contends that since the debtor

acknowledges in his complaint that the defendant satisfied its lien prior to the filing of

this adversary proceeding, as the debtor had uninterrupted possession and use of his

motor vehicle at all times, and as the debtor could have acted on his own to obtain a clear

title to his motor vehicle upon receipt of his bankruptcy discharge, he has not stated any

cause of action.

　　　　Mr. Polillo opposes dismissal of this proceeding.  He disputes whether he

could have acted independently of Harleysville to clear title, emphasizes that Harleysville

had specifically agreed during the bankruptcy case to remove its vehicle lien and provide

clear title to the debtor upon his bankruptcy discharge, and argues in his memorandum

that he suffered damages by Harleysville's inaction.  Thus, he maintains that he is entitled

to monetary relief.


I.


　　　　Harleysville seeks to dismiss the instant complaint under Fed. R. Bankr. P.

---

notification thereof.").  Accordingly, I consider Mr. Polillo as the sole party plaintiff.  <u>In re
Funches</u>, 381 B.R. 471, 487-90 (Bankr. E.D. Pa. 2008).

7012, which procedural rule incorporates, inter alia, Fed. R. Civ. P. 12(b)(6).  Recently,

the Supreme Court explained the standard for determining whether a complaint states a

cause of action, thus entitling the plaintiff to proceed to discovery and possibly to trial.

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face."  [Bell Atlantic Corp. v.
> Twombly, 550 U.S. 544,  570, 127 S. Ct. 1955 (2007)].  A
> claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  Id., at
> 556, 127 S. Ct. 1955.  The plausibility standard is not akin to
> a "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.  Ibid.
> Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"
> Id., at 557, 127 S. Ct. 1955 (brackets omitted).

> Two working principles underlie our decision in Twombly.
> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal
> conclusions.  Threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not
> suffice.  Id., at 555, 127 S. Ct. 1955 (Although for the
> purposes of a motion to dismiss we must take all of the factual
> allegations in the complaint as true, we "are not bound to
> accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted)).  Rule 8 marks
> a notable and generous departure from the hyper-technical,
> code-pleading regime of a prior era, but it does not unlock the
> doors of discovery for a plaintiff armed with nothing more
> than conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.  Id., at
> 556, 127 S. Ct. 1955.  Determining whether a complaint states
> a plausible claim for relief will, as the Court of Appeals
> observed, be a context-specific task that requires the
> reviewing court to draw on its judicial experience and

3

common sense.  [Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d
Cir. 2007.]  But where the well-pleaded facts do not permit
the court to infer more than the mere possibility of
misconduct, the complaint has alleged—but it has not
"show[n]"—"that the pleader is entitled to relief."  Fed. Rule
Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion
to dismiss can choose to begin by identifying pleadings that,
because they are no more than conclusions, are not entitled to
the assumption of truth.  While legal conclusions can provide
the framework of a complaint, they must be supported by
factual allegations.  When there are well-pleaded factual
allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement to
relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

Therefore, I shall accept Mr. Polillo's factual allegations as true, as well as

all reasonable inferences that may be drawn from those allegations.  If, nonetheless, his

complaint fails to meet the pleading standard set forth in Iqbal, dismissal is warranted,

see, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); In re Joubert, 411 F.3d 452

(3d Cir. 2005); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988), unless leave to

amend is appropriate.  See, e.g., Jones v. Domalakes, 161 Fed. Appx. 216, 217 (3d Cir.

2006) (non-precedential); Chemtech Intern., Inc. v. Chemical Injection Technologies,

Inc., 170 Fed. Appx. 805, 811 (3d Cir. 2006) ("[I]n this circuit, '[w]hen a plaintiff does

not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the

court must inform the plaintiff that he has leave to amend within a set period of time,

unless amendment would be inequitable or futile.'") (quoting Grayson v. Mayview State

4

Hosp., 293 F.3d 103, 108 (3d Cir. 2002)); Griffin-El v. Beard, 2009 WL 1229599, at *6

(E.D. Pa. 2009).  Where, however, repleading could not correct the defects in a party's

claim, a court need not grant leave to amend.  See e.g., Alston v. Parker, 363 F.3d 229,

235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to

amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a

curative amendment, unless an amendment would be inequitable or futile."); Peterson v.

Philadelphia Stock Exchange, 717 F. Supp. 332, 337 (E.D. Pa. 1989); see also Massarsky

v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983); Sarfaty v. Nowak, 369 F.2d

256, 259 (7th Cir. 1966) ("Rule 15(a) does not require a court to do a futile thing.").

      With these standards in mind, I accept as true the following facts from Mr.

Polillo's complaint, as well as facts properly within the scope of judicial notice.[2]


II.

A.


      Mr. Polillo filed his chapter 13 case on December 19, 2002.  On February

---

[2]I shall take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries, confirmed plan, the confirmation order, the trustee's final report, and a stipulation filed by these parties in this bankruptcy case.  See, e.g., In re American Rehab & Physical Therapy, Inc., 2006 WL 1997431, at *18 (Bankr. E.D. Pa. 2006); In re Senior Cottages of America, LLC., 320 B.R. 895, 903 (Bankr. D. Minn. 2005); In re Townsville, 268 B.R. 95, 99 n.3 (Bankr. E.D. Pa. 2001); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

25, 2003, he commenced an adversary proceeding against Harleysville to determine,

pursuant to 11 U.S.C. § 506, the extent of the allowed secured claim held by Harleysville

whose collateral was a 1999 F-350 Ford truck owned by the debtor.  Complaint, ¶ 9.  That

proceeding was docketed as Adv. No. 03-0140.  On April 7, 2003, the parties settled the

litigation by stipulating that Harleysville held an allowed secured claim for the vehicle,

with postpetition interest, in the total amount of $29,076.  This allowed amount would be

paid in full through the debtor's chapter 13 plan.  The stipulation further provided that

"[u]pon discharge in this chapter 13, the secured party must remove its lien and provide

title to the debtor."  Stipulation of April 7, 2003 (docketed as entry #8 in Adv. No. 03-

0140).

On November 6, 2003, Mr. Polillo's second modified chapter 13 plan was

confirmed by this court without any objections.  See docket entries ##30, 34 in Bankr.

No. 02-38061.  The confirmed plan provided for a total amount of $34,000.50 to be paid

to the standing chapter 13 trustee over 60 months, with the bulk of that amount being

distributed to Harleysville on account of its $29,076.00 allowed secured claim.  This terse

plan stated in its entirety only the following:

> $550 X 8 months AND $556 X 1 month AND $569.50 X 51
> MONTHS = $34,500.50 TOTAL BASE AMOUNT
>
> (A) CIBIK & CATALDO        $1,430
> Commonwealth of PA        $784.22
>
> (B) Harleysville National        $29,076.00 per court approved stipulation.

6

(C) PRO RATA

On May 9, 2008, the chapter 13 trustee filed his final report, showing that Harleysville Bank was paid its entire allowed secured claim as provided for by the confirmed plan. <u>See</u> docket entry #38. The deadline to object to the debtor's receipt of a discharge under section 1328(a) was set at June 8, 2008. <u>Id.</u> On July 1, 2008, there being no objection filed, this court entered an order discharging the debtor. On July 3, 2008, notice of discharge was served on Harleysville. <u>See</u> docket entry #41. The case was closed under section 350(a) on July 11, 2008.

The day before entry of discharge, June 30, 2008, Mr. Polillo's attorney "caused a demand for the release of the lien on the title to be sent to Harleysville care of their [sic] attorney." Complaint, ¶ 17.[3]

More than one year later, on July 22, 2009, Mr. Polillo filed a motion to reopen his bankruptcy case in order to file an adversary proceeding against Harleysville, because the latter had not provided him with the requested certificate of title noting the satisfaction of its lien. In support of his motion to reopen the case, the debtor argued: "At issue is the integrity of the bankruptcy process which is within the jurisdiction of this court and not a state court." Debtor's Memorandum In Support of Reopening, at 3. The debtor's motion to reopen under section 350(b) was granted by order dated September 21, 2009. On September 22, 2009, the debtor filed the above-captioned adversary

---

[3]The complaint refers to an exhibit A but none is attached.

proceeding.

Sometime in August 2009 (after the debtor's motion to reopen was filed but prior to the filing of this adversary proceeding) Harleysville delivered a certificate of title to his motor vehicle to Mr. Polillo that reflected the satisfaction of its lien. Complaint, ¶ 19. Mr. Polillo nevertheless alleges that he suffered actual damages due to the 13-month delay in obtaining this certificate of title from Harleysville:

> Prior and subsequent to the reopening of this case the debtor has engaged in meetings with their [sic] attorney and members of his staff about this matter. In the interim, debtor has incurred $125 per month storage fees, loss of use of the vehicle for his contracting work forcing him to rely upon friends and co-workers for transportation, and is unable to trade in the vehicle for a new vehicle required for his work.

Complaint, ¶ 20.

### B.

Before addressing the sufficiency of the debtor's four asserted causes of action against Harleysville, I note that both parties, particularly when discussing Count III, rely upon certain provisions of Pennsylvania's Motor Vehicle Code, 75 Pa. C.S.A. §§ 101 et seq.

Pennsylvania has established a method of perfection of liens on motor vehicles other than via possession of the collateral. See generally Marian Bank v.

8

International Harvester Credit Corp., 550 F. Supp. 456, 462 (E.D. Pa. 1982).  Essentially, the certificate of title for the vehicle identifies the owner and any secured creditors.  The title certificate is sent by the Department of Transportation to the lienholder.  75 Pa. C.S.A. §§ 1106(a), 1107.  The notation of a lien on a certificate of title reflects the perfection of the lien on the vehicle.  75 Pa. C.S.A. § 1132.1(d).  Transfer of ownership of a motor vehicle generally requires the owner signing in a designated place on the certificate of title.  75 Pa. C.S.A. § 1111(a).

> When a lien on a vehicle is satisfied, the Motor Vehicle Code states:
>
> Where there are no subsequent liens upon a vehicle, the following rules apply upon the satisfaction of a security interest in the vehicle:
>
> (1) The outstanding certificate of title shall be mailed or delivered immediately to the owner of the vehicle with proper evidence of satisfaction and release or the lienholder may apply for corrected title to be issued in the name of the owner.
>
> (2) The owner may mail or deliver the certificate of title with proper evidence of satisfaction of the security interest to the department which shall issue a corrected certificate of title without a statement of liens or encumbrances. The corrected certificate of title may also be issued when the outstanding certificate of title cannot be returned and proper evidence is produced that all recorded security interests have been satisfied.

75 Pa. C.S.A. § 1135(a).  Pennsylvania law further provides a remedy if the lienholder fails to comply with this satisfaction requirement within five days of the satisfaction of the lien, as follows:

> (1) Any person failing to deliver upon demand a satisfied
> certificate of title as required by subsection (a)(1) is guilty of
> a summary offense and shall, upon conviction, for a first
> offense be sentenced to pay a fine of $50 and for a subsequent
> offense be sentenced to pay a fine of $100.

75 Pa. C.S.A. § 1135(c).

III.

A.

Mr. Polillo alleges in Count I that Harleysville violated the discharge

injunction set forth in 11 U.S.C. § 524(a) by failing to provide him with the certificate of

title that Harleysville received as lienholder, with the lien noted as satisfied by

Harleysville on the certificate.  Upon receipt, the debtor would have been able to either

obtain from the Department of Transportation a new certificate reflecting no liens, or

could have transferred ownership of the vehicle to a new owner using the original

certificate with its lien noted as satisfied.  See 75 Pa. C.S.A. §§ 1107, 1111, 1135.

Upon completion of his chapter 13 plan, the debtor was entitled to receive a

bankruptcy discharge under 11 U.S.C. § 1328(a).  Upon receipt of that discharge on July

1, 2008, section 524(a) established an injunction against the debtor's creditors.  Section

524(a)(1), which voids personal liability on a judgment and section 524(a)(3), which

10

enjoins the commencement or continuation of certain litigation against the debtor, do not

appear to be applicable in this proceeding.  Although not specifically cited, it is likely that

Mr. Pollilo is relying upon 11 U.S.C. § 524(a)(2).  This statutory provision states that the

entry of an order of discharge in a bankruptcy case "operates as an injunction against the

commencement or continuation of any action, the employment of process, or an act to

collect, recover or offset any such debt as a personal liability of the debtor."  As the Third

Circuit Court of Appeals has explained: "Under § 524(a)(2), a discharge operates as an

injunction against a broad array of creditor efforts to collect debts as personal liabilities of

the discharged debtor."  In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005); see Hedges v.

Resolution Trust Corp., 32 F.3d 1360, 1363 (9th Cir. 1994); In re Ellsworth, 158 B.R.

856, 858 (M.D. Fla. 1993); see also Matter of Paeplow, 972 F.2d 730, 733 (7th Cir. 1992)

("§ 524 provides that discharge enjoins any former creditors from commencing any action

to collect a 'personal liability' of the debtor.").

        Unlike the automatic stay found in section 362, which contains enforcement

provisions in section 362(k), Congress has not provided a statutory mechanism for the

enforcement of the discharge injunction.  Therefore, courts have relied upon the common

law remedy of civil contempt.  See, e.g., Espinosa v. United Student Aid Funds, Inc., 553

F.3d 1193, 1200 (9th Cir. 2008), cert. granted, 129 S. Ct. 2791 (2009); Walls v. Wells

Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002); Matter of National Gypsum Co.,

118 F.3d 1056, 1063 (5th Cir. 1997); Matter of Rosteck, 899 F.2d 694 (7th Cir. 1990); In

re Elias, 98 B.R. 332 (N.D. Ill. 1989); In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa.

1991) ("Enforcement of § 524 may include holding violators in contempt of court for

attempts to collect discharged debts"); In re Wagner, 87 B.R. 612 (Bankr. C.D. Cal.

1988). Courts have determined that the power to address such infractions must exist, else

the statutory discharge injunction would be hollow. See In re Elias, 98 B.R. at 332; see

also In re Joubert, 411 F.3d at 455.

        In the context of a motion for enforcement of section 524(a), if the creditor

knew of the debtor's bankruptcy filing and knew of the entry of discharge before it

continued its actions to collect a discharged, prepetition debt, then civil contempt

sanctions may be appropriate. See In re Elias, 98 B.R. at 337; In re Matthews, 184 B.R.

594, 599 (Bankr. S.D. Ala. 1995); In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa.

1991); In re Rhyne, 59 B.R. 276 (Bankr. E.D. Pa. 1986); Matter of Pierce, 29 B.R. 612,

615 (Bankr. E.D.N.C. 1983).

        To violate the discharge injunction, however, a creditor's actions must have

been intended in some manner to recover on its discharged debt. For example, in In re

Pratt, 462 F.3d 14 (1st Cir. 2006), GMAC refused to either release its lien on a debtor's

vehicle or to repossess the vehicle. Id., at 16. The creditor would only release the lien if

the debtor paid the discharged amount, and alternatively refused to repossess the vehicle

that had become valueless. Id. The court held that the creditor's actions violated the

discharge injunction, finding that its actions constituted an attempt to compel payment of

12

the discharged obligation.  Id., at 20.  "We can only conclude that the GMAC refusal to

release its valueless lien so that the vehicle could be junked—though presumably not

made in bad faith—was 'coercive' in its effect, and thus willfully violated the discharge

injunction."  Id.

       In contrast, in In re Casarotto, 407 B.R. 369 (Bankr. W.D. Mo. 2009), the

court granted summary judgment to the defendants alleged to have violated the

bankruptcy discharge where the plaintiff "merely state[d] . . . that the 'Defendants' refusal

to release the State Tax Lien with respect to the Residence is an act to collect the

discharged State Tax Debt' and . . . that 'Defendants' refusal to release its State Tax Lien

with respect to the Residence constitutes a coercive attempt to enforce Plaintiff's personal

obligation on the discharged State Tax Debt.'"  Id., at 378.  The plaintiff had not

proffered any facts supporting the conclusory allegations of coercement.  Id.  The court

concluded "merely maintaining a tax lien against a property, without additional coercive

attempts to collect the debt as a personal liability, does not violate the discharge

injunction."  Id.; see generally In re Paul, 534 F.3d 1303, 1308 (10th Cir. 2008):

> The inquiry is objective; the question is whether the creditor's
> conduct had the practical, concrete effect of coercing payment
> of a discharged debt, and bad faith is not required. . . .  By the
> same token, the presence of some other procedural
> impropriety or error in connection with the creditor's action
> will not give rise to a violation of the discharge injunction if
> the objective effect is not to coerce payment of a discharged
> debt[.]

(citation omitted); In re Schlichtmann, 375 B.R. 41, 97 (Bankr. D. Mass. 2007) ("If an act

is not in fact one to collect or enforce a prepetition debt, then whatever its faults, it is not a violation of the discharge, even though undertaken by the holder of a discharged debt.").

Here, as asserted in the complaint, the debtor and Harleysville agreed to an amount representing the allowed secured claim of Harleysville. Mr. Polillo paid that secured claim in full through his chapter 13 plan, as was also agreed upon in the parties' stipulation. Therefore I assume, for the purpose of this motion to dismiss, that Mr. Polillo means to allege that by failing to provide him with a certificate of title to the vehicle noting the satisfaction of Harleysville's lien, which certificate he could use either to sell the vehicle or to obtain a new certificate without any recorded lien, Harleysville was attempting post-discharge to collect some amount beyond the secured claim paid. (Nothing in the record reveals how much Harleysville claimed due before the parties settled on the $29,076 amount.)

But in asserting this claim under section 524(a), Mr. Polillo fails to posit facts that support his implied conclusion: that not providing the certificate as agreed was intended by Harleysville to coerce him to pay a discharged obligation. He alleges no demands by Harleysville, nor collection actions by this creditor; Harleysville did not seek to recover the debtor's truck. The allegation that Harleysville failed to comply with the parties' stipulation and note the satisfaction of its vehicle lien, without more, fails to plead any act of coercion and thus any violation of the discharge injunction. See In re

14

<u>Casarotto</u>, 407 B.R. at 377:

> Section 524 "require[s] some affirmative collection efforts on the part of the creditor in order [to violate the] discharge injunction." <u>In re Dendy</u>, 396 B.R. 171, 179 (Bankr. D.S.C. 2008). The mere act of refusing to release a lien, even if invalid, does not violate the discharge injunction absent an attempt to enforce the lien, a violation of a court order, or an intent to collect the debt. <u>Id.</u> at 183. . . .

> The Debtor has failed to meet her burden of setting forth specific facts capable of providing clear and convincing evidence that the Defendants were attempting to collect the discharged debt. The Defendants have made no attempt to enforce or foreclose on their lien.

<u>Compare</u> <u>In re Pratt</u>, 462 F.3d 14, 19 (1st Cir. 2006) (lien creditor, which "expressly conditioned its release of the lien upon the [debtors'] agreement to repay the loan balance in full" violated discharge injunction).

Rather than alleging one or more acts of coercion on the part of the defendant, the debtor merely asserts that certain consequences resulted from Harleysville's failure to comply with its stipulated agreement. His allegation that Harleysville did not respond to his one and only request for the title certificate noting the lien satisfaction does not constitute any violation of the discharge injunction by Harleysville. <u>See</u> <u>In re Pratt</u>, 462 F.3d at 20 ("[T]he 'coerciveness' involved in each case must be assessed on its particular facts.").

Accordingly, dismissal of Count I is warranted as no cause of action for violation of the discharge injunction has been stated.

15

B.


Mr. Polillo asserts in Count II that Harleysville violated the confirmation

order and 11 U.S.C. § 1327, alleging that "[t]he Confirmation Order imposed an

affirmative duty on Harleysville to release its lien on the title to the vehicle and to deliver

the said title to the Plaintiffs [sic] upon entry of the Discharge Order."  Complaint, ¶ 28.

Mr. Polillo attached the "Second Modified Plan and Amended Plan Summary" to his

Response to Motion to Dismiss/Withdraw Document filed by Defendant Harleysville

National Bank.[4]  As noted above, as to Harleysville, the confirmed plan provided only:

"(B) Harleysville National[,] $29,076.00 per court approved stipulation."

Section 1327(a) addresses the effect of confirmation, stating that "[t]he

provisions of a confirmed plan bind the debtor and each creditor whether or not the claim

of such creditor is provided for by the plan, and whether or not such creditor has objected

to, has accepted, or has rejected the plan."  See generally In re Diviney, 225 B.R. 762, 771

(B.A.P. 10th Cir. 1998).

The terms of a confirmed bankruptcy plan are to be interpreted using the

general principles of contract interpretation.  See, e.g., In re Shenango Group Inc., 501

---

[4]Although not initially attached to his complaint, Harleysville has not complained of
consideration of the terms of the confirmed chapter 13 plan (whose terms as noted earlier are
otherwise subject to judicial notice).  Accordingly, I can consider the plan without converting
Harleysville's motion to dismiss to a summary judgment motion.  See Pryor v. NCAA, 288 F.3d
548, 560 (3d Cir. 2002); Dougherty v. Wells Fargo Home Loans, Inc., 425 F. Supp.2d 599, 602-
03 (E.D. Pa. 2006); In re Beck, 272 B.R. 112, 114 n.1 (Bankr. E.D. Pa. 2002).

16

F.3d 338, 344 (3d Cir. 2007); In re Stratford of Texas, Inc., 635 F.2d 365, 368 (5th Cir.

1981); In re Stuart, 402 B.R. 111, 126 (Bankr. E.D. Pa. 2009).  Where the terms of a

confirmed plan are clear, they are enforced as written.  See In re Dow Corning Corp., 456

F.3d 668, 676 (6th Cir. 2006) ("In interpreting a confirmed plan, courts use contract

principles, since the plan is effectively a new contract between the debtor and its

creditors. . . .   State law governs those interpretations, and under long-settled contract law

principles, if a plan term is unambiguous, it is to be enforced as written, regardless of

whether it is in line with parties' prior obligations."); cf. Murphy v. Duquesne Univ. of

the Holy Ghost, 565 Pa. 571, 590-91 (2001) ("The fundamental rule in interpreting the

meaning of a contract is to ascertain and give effect to the intent of the contracting

parties.").  Ambiguities in the language of a contract (i.e., confirmed plan) are construed

against the drafter, here the debtor:

> If a debtor submits a generalized statement that it will pay
> secured creditors in full—100%, creditors are entitled to
> interpret that statement as guaranteeing the payment of each
> and every part of the creditor's claim.  If the debtor wishes to
> be more specific and secure a confirmed plan that modifies
> the plain language of a 100% payment guarantee, it is the
> debtor's duty to put the creditor on notice by specifically
> detailing any exceptions.  Failing this, the debtor as draftsman
> of the plan has to pay the price if there is any ambiguity about
> the meaning of the terms of the plan.  This comports with the
> long-standing rule that ambiguous terms of a document are to
> be interpreted against the party that drafted them.

In re Fawcett, 758 F.2d 588, 591 (11th Cir. 1985); see, e.g., In re Leis, 198 B.R. 257, 261

(Bankr. N.D. Ohio 1996).

In this instance, although the language of Mr. Pollilo's confirmed plan references the stipulation, I find that it does so only to punctuate the amount to be paid to Harleysville. It does not incorporate the terms of the stipulation into the plan. See In re Phar-Mor, Inc. Securities Litigation, 172 F.3d 270, 274 (3d Cir. 1999) ("The phrase 'pursuant to the terms of the Settlement' fails to incorporate the terms of the Settlement Agreement into the order because '[a] dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order.'") (quoting Miener v. Missouri Dep't of Mental Health, 62 F.3d 1126, 1128 (8th Cir. 1995)). Moreover, it does not direct Harleysville to release its lien at the completion of the plan. Accordingly, no provision of the debtor's confirmed plan obligates Harleysville to release the lien upon payment in full of the $29,076 amount. Nor does the confirmation order direct Harleysville to satisfy its lien upon completion of the plan. See docket entry # 34. Only the settlement stipulation in the debtor's 2003 adversary proceeding so binds the creditor.

Although the debtor does not so argue, while the express provisions of his confirmed plan and confirmation order did not address the satisfaction of Harleysville's security interest in his motor vehicle, section 1327(c) does provide that the vehicle was free and clear of Harleysville's lien. See generally Cen-Pen Corp. v. Hanson, 58 F.3d 89 4th Cir. 1995). Arguably, a chapter 13 debtor may seek declaratory relief against a secured creditor based upon section 1327(c). See In re Deutchman, 192 F.3d 457 (4th

18

Cir. 1999) ("Deutchman then brought this action, seeking a declaratory judgment that the

IRS's liens would be extinguished upon completion of payments due under the plan.");

see also In re Ahern Enterprises, Inc., 507 F.3d 817 (5th Cir. 2007) (declaratory judgment

sought under section 1141(c), the chapter 11 counterpart to section 1327(c)).  In this

proceeding, however, the complaint makes clear that Harleysville has already noted the

satisfaction of its vehicle lien, rendering moot any declaratory relief or injunctive relief.

See generally In re Georges, 138 Fed. Appx. 403 (3d Cir. 2005) (non-precedential)

(request for equitable relief under section 524 was moot).

For purposes of the instant motion to dismiss, I need not decide, in light of

In re Joubert, whether any or all three subsections of section 1327 create a private right of

action.  See generally In re Venuto, 343 B.R. 120, 132 n.19 (Bankr. E.D. Pa. 2006).  If a

right of action exists under section 1327(c), it is for equitable relief only based upon

section 105(a).[5]  As explained by one court:

> Section 1327(c) provides that property vesting in the debtor
> after confirmation is "free and clear of any claim of interest of
> any creditor provided for by the plan."  Plaintiff may have
> stated a claim for injunctive or declaratory relief under her
> Chapter 13 plan.  However, her claims for declaratory or
> injunctive relief are at this point moot. . . .  Plaintiff has cited
> no authority suggesting that defendant's action, however
> unjustified, was intended by Congress to be actionable for
> damages under § 1322 of the Bankruptcy Code or a Chapter
> 13 plan.

---

[5]Chapter 13 contains no counterpart to 11 U.S.C. § 1142(b).

19

Smith v. Keycorp Mortg., Inc., 151 B.R. 870, 876 (N.D. Ill. 1993).  This limitation is

consistent with the instruction of the Third Circuit Court of Appeals in In re Joubert,  411

F.3d 452, 455 (3d Cir. 2005):

> [W]e consider the analogous § 524 case law applicable to her
> [11 U.S.C.] § 506(b)-based claim, and hold that § 105(a) does
> not afford a private cause of action to redress an alleged
> 506(b) violation.  Joubert's lone remedy is a contempt
> proceeding pursuant to § 105(a) in bankruptcy court.

See also Mathews v. Washington Mut. Bank, FA, 2006 WL 2380460, at *7 (E.D. Pa.

2006); In re Myles, 395 B.R. 599, 609 (Bankr. M.D. La. 2008) (section 1327 does not

create a private right of action to recover damages or restitution); Guetling v. Household

Financial Services, Inc., 312 B.R. 699, 704 (M.D. Fla. 2004) (section 1327 does not

provide any private right of action for monetary relief).[6]

In Count II, the debtor seeks only damages, a traditional form of legal relief.

See, e.g., Novak v. Andersen Corp., 962 F.2d 757, 761 (8th Cir. 1992).  Moreover, while

equity may provide monetary relief in appropriate circumstances, see generally, e.g.,

Tomlinson v. Virtua-West Jersey Health System, 2005 WL 1529411, at *4 (D.N.J. 2005),

it is well accepted that equitable relief may be granted only where legal remedies are

inadequate.  See, e.g., Fechter v. HMW Industries, Inc., 879 F.2d 1111, 1119 (3d Cir.

---

[6]I am aware that In re Padilla, 389 B.R. 409, 431 (Bankr. E.D. Pa. 2008), holds that the
provisions of a confirmed plan, binding under section 1327(a), may be enforced by 11 U.S.C. §
105(a).  In so concluding, the court in Padilla does not address section 1327(c), nor state that
more than equitable relief may be sought.  See In re Janssen, 396 B.R. 624, 627 (Bankr. E.D. Pa.
2008) (referring to a complaint for equitable relief under section 1327(a)).

1989); Wright & Miller, 4 <u>Fed. Prac. & Proc. Civ.</u> § 1043 (3d ed. 2009) ("Certain

principles of 'equity jurisdiction,' such as the rule that equitable relief is not available

unless the remedy at law is inadequate" remain applicable under current federal practice.)

       Harleysville conditionally promised to satisfy its lien as one of the

provisions of the parties' 2003 settlement agreement.  As will be discussed below, Mr.

Pollilo may seek damages by asserting a state law breach of contract claim for damages.

That legal remedy is adequate for the relief sought, and would preclude any equitable

damage award.

       Accordingly, even if I assume that a violation of section 1327 gives rise to a

claim for equitable relief, in light of the pre-litigation release of its lien by Harleysville,

and given the availability to the debtor of a breach of contract claim, I will grant

Harleysville's motion to dismiss Count II as no cause of action is stated therein.

## C.

       Mr. Pollilo's fourth asserted claim is that defendant Harleysville violated

sections 542 (turnover) and 362(a)(3) (automatic stay) of the Bankruptcy Code by failing

to provide clear title to the vehicle upon the reopening of the bankruptcy case: "As of the

date of the reopening of this case Harleysville was under a direct and affirmative duty to

turnover the said title to the vehicle to the Plaintiffs [sic] with its lien duly canceled and

21

released." Complaint, ¶ 39. This fourth claim also fails to state a cause of action for a

number of reasons. Among them:

      The debtor's complaint acknowledges that Harleysville provided the debtor

with the sought-after certificate of title in August 2009. Complaint, ¶ 19. This case was

reopened in September 2009. Thus, the debtor had possession of the desired certificate of

title at the time this case was reopened.[7] And between the closing and reopening of this

bankruptcy case, the automatic stay found in section 362(a) was inapplicable. See 11

U.S.C. § 362(c)(2)(A) (bankruptcy stay terminates upon the closing of the case).

      Furthermore, section 362(a)(3) provides that a bankruptcy petition operates

as a stay of "any act to obtain possession of property of the estate or of property from the

estate or to exercise control over property of the estate[.]" Section 542 requires an entity

in possession of property that the trustee may use, sell or lease to deliver to the trustee

such property. 11 U.S.C. § 542(a).

      As a certificate of title in Pennsylvania is evidence of ownership of

property, not property itself, see In re Ambrose, 148 B.R. 244 (Bankr. W.D. Pa. 1992); 75

Pa. C.S.A. § 1106(c) (certificate of title is prima facie evidence of facts appearing on the

certificate); Semple v. State Farm Mut. Auto. Ins. Co., 215 F. Supp. 645, 647 (E.D. Pa.

1963) ("[I]n Pennsylvania a certificate of title does not constitute more than some

evidence of ownership."), Harleysville's failure to turn over the title certificate did not

---

    [7]Harleysville provided the title after the motion to reopen was filed and before it was
granted.

violate the automatic stay; nor did Harleysville fail to turn over estate property to the trustee.

Accordingly, I will dismiss Mr. Polillo's Count IV for failure to state a cause of action.

IV.

Mr. Polillo's Count III contends that Harleysville's inaction upon the debtor's completion of his plan violated Pennsylvania's Unfair Trade Practice and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1, et seq. Essentially, Count III maintains that Harleysville violated 75 Pa. C.S.A. § 1135(a), a section of Pennsylvania's Vehicle Code, quoted above, which directs lienholders to either send the original certificate of title to the owner of the vehicle or to the Commonwealth promptly upon satisfaction of the lien. Mr. Polillo avers that this motor vehicle code infraction is a per se violation of the UTPCPL. Specifically, he alleged that Harleysville thereby violated section 201-2(4) of Pennsylvania's Unfair Trade Practice and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1, et seq. Defendant Harleysville responds that section 1135(a) does not create a private right of action, and non-compliance with its provisions is not a violation of Pennsylvania's consumer protection statute.

Whether Mr. Pollilo has stated a cause of action against Harleysville either

23

directly under Pennsylvania's Motor Vehicle Code or derivatively under its UTPCPL are

questions that this court has no power to resolve, as they fall outside the scope of subject

matter jurisdiction.

Federal courts, including bankruptcy courts, can only determine disputes

over which they have subject matter jurisdiction.  See, e.g., In re Guild and Gallery Plus,

Inc., 72 F.3d 1171 (3d Cir. 1996); In re Hall's Motor Transit Co., 889 F.2d 520 (3d Cir.

1989).  Indeed, federal courts are obligated to insure that they have subject matter

jurisdiction to determine litigation and may raise the issue sua sponte.  See, e.g., In re

Yousif, 201 F.3d 774, 776 (6th Cir. 2000); Liberty Mutual Insurance Co. v. Ward

Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995); In re Hall's Motor Transit Co., 889 F.2d

at 522.

In litigation involving multiple claims or parties, the various claims must be

analyzed for bankruptcy jurisdictional purposes on a claim-by-claim basis.  See Halper v.

Halper, 164 F.3d 830, 837 (3d Cir. 1999).  Unlike the debtor's claims under Counts I, II,

and IV, which claims are based upon provisions of the Bankruptcy Code and so may fall

within this court's jurisdiction, see e.g., In re Winstar Communications, Inc., 554 F.3d

382, 405 (3d Cir. 2009) ("'[A] proceeding is core [1] if it invokes a substantive right

provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the

context of a bankruptcy case.'") (quoting Halper, 164 F.3d at 836), Count III raises a

claim under Pennsylvania law that clearly could arise independent of a bankruptcy case.

24

Thus, subject matter jurisdiction as to Count III exists only if this claim falls within this

court's "related to" jurisdiction.  That is "'the outcome of that proceeding could

conceivably have any effect on the estate being administered in bankruptcy.'"  Id., 554

F.3d at 405 (quoting Halper, 164 F.3d at 837).

Mr. Polillo's claim that Harleysville violated a state statute—either section

1135 of the Motor Vehicle Code, or, derivatively, the UTPCPL— could not conceivably

have any effect on the estate being administered in the bankruptcy case, originally closed

July 11, 2008.  The debtor completed his plan payments and received his bankruptcy

discharge.  The chapter 13 trustee reported that he had distributed all funds in his

possession and had no further duties in the case.  See docket entry #38 (dated May 9,

2008).

Indeed, as Mr. Pollilo acknowledged, any recovery under Count III would

inure only to him, would not be part of his bankruptcy estate, and would not affect his

creditors.  See Debtor's Memorandum in Support of Motion to Reopen, at 3; Debtor's

Supplemental Memorandum.  Therefore, Count III is simply a two-party dispute

involving application of Pennsylvania state law, the result of which would have no effect

on the bankruptcy estate or the administration of the chapter 13 bankruptcy case.

Accordingly, this court must dismiss Count III for lack of subject matter

jurisdiction even though Harleysville did not seek dismissal under Fed. R. Civ. P.

12(b)(1).  See, e.g., In re McAlpin, 278 F.3d 866 (8th Cir. 2002); In re Hart, 326 B.R. 901

25

(B.A.P. 6th Cir. 2005); In re Brown, 300 B.R. 871 (D. Md. 2003); In re Shuman, 277

B.R. 638 (Bankr. E.D. Pa. 2001).[8]


V.


One final issue remains for consideration: whether the debtor should be

granted leave to amend his complaint.

It seems clear that any duty of the defendant to provide evidence of clear

title to Mr. Polillo arises from the settlement stipulation entered into by those two parties

in 2003.[9]  The debtor's complaint refers to a stipulation between himself and Harleysville

that settled an earlier adversary proceeding.  Complaint, ¶ 12.  This stipulation expressly

required Harleysville "to remove its lien and provide title to the debtor" upon the debtor's

receipt of a chapter 13 discharge.

---

[8]Mr. Polillo's suggestion that this court exercise "supplemental jurisdiction" under  28
U.S.C. § 1367 cannot be granted.  Bankruptcy courts, unlike district courts, are limited to the
jurisdictional grant provided in  28 U.S.C. § 1334, which grant excludes supplemental
jurisdiction.  See, e.g., Matter of Walker, 51 F.3d 562, 572-73 (5th Cir. 1995); In re Enron Corp.,
353 B.R. 51, 62 (Bankr. S.D.N.Y. 2006); In re Foundation for New Era Philanthropy, 201 B.R.
382, 397-98 (Bankr. E.D. Pa. 1996).

[9]Harleysville contends that Pennsylvania's Motor Vehicle Code contains provisions, such
as section 1138(c), that would permit the owner of a vehicle to obtain a certificate of title
reflecting the absence of any lien when a lienholder fails to act voluntarily to acknowledge that
its security interest has been satisfied or is no longer enforceable.  The Bankruptcy Code contains
provisions that arguably permit the debtor or trustee to obtain a binding determination that a lien
has been satisfied.  But it is the stipulation between Harleysville and Mr. Polillo that may have
placed a duty of the secured creditor to act affirmatively upon completion of the debtor's chapter
13 plan that could give rise to damages.

26

Settlement agreements are considered to be contracts.  See, e.g., Consolidated Rail Corp. v. Portlight, Inc., 188 F.3d 93, 96 (3d Cir. 1999); Mastroni-Mucker v. Allstate Ins. Co., 2009 WL 1497107, at *7 (Pa. Super. 2009) ("The enforceability of settlement agreements is determined according to principles of contract law."); Thompson v. T.J. Whipple Const. Co., 2009 WL 807467, at *3 (Pa. Super. 2009) ("Settlement agreements 'are regarded as contracts and must be considered pursuant to general rules of contract interpretation.'") (quoting Friia v. Friia, 780 A.2d 664, 668 (Pa. Super. 2001)).

Although the debtor's legal theories advanced in his complaint are not supported by his factual allegations, or may be outside of this court's jurisdiction, he may be able to state a cause of action for breach of contract: i.e., the settlement agreement entered into in April 2003.[10]  Moreover, as noted earlier, a plaintiff should be granted leave to amend if an amendment would not be futile.  See, e.g., Chemtech Intern., Inc. v. Chemical Injection Technologies, Inc., 170 Fed. Appx. 805, 811 (3d Cir. 2006) (non-precedential).

In this instance, however, I conclude, as with Count III, that I would not have any jurisdiction over the debtor's breach of contract claim, thereby rendering an amendment in this court futile.

---

[10]Under Pennsylvania law, however, a party generally is not entitled to punitive damages for breach of contract, see, e.g., DiGregorio v. Keystone Health Plan East, 840 A.2d 361, 370 (Pa. Super. 2003), nor attorneys's fees unless the contract so provides.  See Miller v. Miller, 983 A.2d 736, 743 (Pa. Super. 2009).

27

The Supreme Court in <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 378 (1994), explained that "Enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." The Court further explained that federal court jurisdiction to enforce a settlement agreement may exist "if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." <u>Id.</u>, at 381; <u>see also</u> <u>Higdon v. Tire Recycling, Inc.</u>, 2009 WL 3645084 (W.D. Ky. 2009); <u>see generally</u> <u>In re Fibermark, Inc.</u>, 369 B.R. 761 (Bankr. D. Vt. 2007). Absent either of these conditions, a plaintiff must enforce his settlement agreement in state court, unless there is some independent basis for federal jurisdiction. <u>Kokkonen</u>, 511 U.S. at 382.

While the specific terms of the settlement agreement were approved by this court via written submission of both parties, that approval does not serve as a basis to enforce the stipulation. As explained in <u>In re Zipper</u>, 207 B.R. 695, 699 (Bankr. D. Kan. 1997):

> Nor does the order of June 19, which the Court analyzed in its oral findings and conclusions, sound as a command against breach of the settlement agreement. Rather, at most it is an approval of a settlement agreement, a familiar event in

28

> bankruptcy cases in which the court is often called upon to
> consider whether a proposed settlement infringes upon rights
> of various constituencies or complies with Code provisions.
> If such an approval order is to be the footing for a finding of
> contempt, counsel must ensure that it contains language
> informing affected parties that they are within the structure of
> its commandments.

See Kokkonen, 511 U.S. at 381 ("The judge's mere awareness and approval of the terms

of the settlement agreement do not suffice to make them part of his order."); In re Phar-

Mor, Inc. Securities Litigation, 172 F.3d at 274-75 ("While the district court did approve

the terms of the Settlement Agreement, the Supreme Court has made clear that mere

approval of a settlement agreement does not confer subject matter jurisdiction to enforce

that agreement."); In re Ashland Regional Medical Center, 378 B.R. 450, 453 (Bankr.

M.D. Pa. 2007) ("[M]erely because I had jurisdiction of the underlying matter [allowance

of claim] does not vest me with jurisdiction to entertain the enforcement of the settlement

. . . .").

Along with the debtor's claim under Count III, any asserted breach of

contract claim raised against Harleysville must be heard in state court, as the 2003

settlement stipulation neither contained a provision regarding my retention of jurisdiction,

nor requested an order that directed the parties to implement the terms of their agreement.

Furthermore, as with Count III, its outcome would not fall within the "related to"

jurisdiction of this bankruptcy court.

Accordingly, an order shall be entered dismissing Mr. Pollilo's complaint

29

for failure to state any cause of action and for lack of subject matter jurisdiction.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated: January 15, 2010